[Civ. No. 2672.   First Appellate District, Division One.—May 2, 1919.]

## WONG FOO, Respondent, v. SOUTHERN PACIFIC COMPANY (a Corporation), Appellant.

[1] SALES—AGREEMENT FOR SALE OF POTATOES—DELIVERY AT GIVEN POINT—NATURE OF CONTRACT—TITLE.—An agreement for the sale of potatoes to be delivered f. o. b. at the river bank and shipped to a given point, their arrival in good condition at the latter place to be considered the time and place where the sale is to be consummated, constitutes but an executory contract of sale, the title to the potatoes remaining in the vendor.

[2] ID.—PAYMENT OF PURCHASE PRICE—PRECEDENT CONDITION OF SALE—PASSAGE OF TITLE.—Where such contract provides that the balance of the purchase price is to be paid after receipt of the potatoes in good merchantable condition, such payment is a precedent condition of sale which suspends the completion of the contract until this condition is performed, and prevents the right of property passing to the vendee.

[3] ID.—REFUSAL TO PAY—TERMINATION OF CONTRACT.—Where, upon the arrival of the potatoes at the specified point, the purchaser refuses to pay the balance of the purchase price, the agreement terminates and the purchaser acquires no title in the potatoes which it can convey to another.

APPEAL from a judgment of the Superior Court of the City and County of San Francisco.   Daniel C. Deasy, Judge. Reversed.

The facts are stated in the opinion of the court.

F. A. Cutler and John A. Wilson for Appellant.

Pringle & Robbins for Respondent.

KERRIGAN, J.—This is an action to recover damages for the alleged conversion of 810 sacks of potatoes by defendant company in its capacity as warehouseman.

Plaintiff claimed to be the owner and entitled to the possession of the property, which had been deposited for storage in the warehouse of the defendant company at Stockton.   It is alleged in the complaint that while the potatoes were in the possession of defendant, plaintiff demanded the same and offered to pay the charges thereon, but that defendant not

only failed to deliver them, but converted and disposed of the same to its own use.

The answer of the defendant specifically denied the allegations of the complaint, and for a separate answer alleged that on the twenty-fourth day of November, 1915, one James Donlon entered into an agreement with a produce firm called the Rourke Company, whereby said Donlon agreed to sell said company 810 sacks of potatoes at $1.30 a sack, and that under the terms of said agreement said potatoes were to be delivered f. o. b. at the river bank and shipped to Stockton, their arrival in good condition at said place to be considered as the time and place of the consummation of said sale. The answer further alleged that on December 2, 1915, Donlon shipped the potatoes to Rourke Company, and that defendant received them and stored the same in its warehouse, but that Rourke Company had not prior to January 12, 1916, or at any time thereafter paid Donlon any part of the purchase price thereof, but that on said last-named date Rourke Company had declared its inability to pay its debts, whereupon said Donlon gave notice to defendant company not to deliver the potatoes to said company, and demanded possession of them, in pursuance to which demand defendant delivered the potatoes to Donlon.

[1] From the evidence it appears that the sale of the potatoes was negotiated by an agent of Rourke Company with one Hop Sing, who had charge of Donlon's land, and who was farming the same under an agreement with Donlon. It also appears that Hop Sing had no title to the potatoes, but that he was vested with authority to make a sale thereof. The material part of the agreement entered into by these parties on behalf of their principals is as follows:

"Hop Sing hereby sells to Rourke Company . . . 810 fancy spuds at $1.30 per sack . . . being that certain lot in ground at Donlon Island . . . to be delivered f. o. b. bank and shipped to Stockton on or before Monday, next week, 1915, unless otherwise directed by Rourke Co. Must be new sacks, full, open-mouthed, contents properly graded and sorted and . . . to average 116 lbs to sack.

"In consideration I hereby acknowledge receipt of . . . one dollar in part payment of above sale; balance to be paid after receipt of goods in good merchantable condition as above mentioned. It is understood that arrival of goods at

Stockton in good condition, as provided above, shall be considered as the time and place for the consummation of this sale.

"   . . . Rourke Co., Buyer,

"By Kei Woo.

"Dated Nov. 24, 1915."

On November 29, 1915, five days after the execution of this agreement, Rourke Company sold the potatoes to plaintiff, Wong Foo, for the sum of $1,053.

To support his claim of title to the property plaintiff introduced in evidence the agreement of sale above recited, and also evidence of his purchase from Rourke Company. In defense of the action defendant claimed that under the agreement the Rourke Company never acquired title to the property, and therefore it could convey none.

Judgment went for plaintiff; a new trial was denied, and this is an appeal from such judgment and order.

We are of the opinion that appellant is correct in its contention that Rourke Company never acquired title to the property in question. At the time of the execution of the contract the potatoes were in the ground, and it was provided by the terms of the agreement that they be of a certain quality and weight, and further that they be shipped to Stockton, where the sale was to be consummated. These provisions of the agreement were for the purpose of permitting the Rourke Company either to elect to purchase the potatoes if they came up to the required standards, or to reject the same if they failed to measure up thereto. The agreement, therefore, amounted to no more than an executory contract of sale, the title to the property remaining in the vendor. (*Blackwood* v. *Cutting Packing Co.*, 76 Cal. 212, [9 Am. St. Rep. 199, 18 Pac. 248].)

[2] In addition thereto the contract further provided that the balance of the purchase price was to be paid after receipt of the potatoes in good merchantable condition. The payment was, therefore, a precedent condition of sale, which suspended the completion of the contract until this condition was performed, and prevented the right of property passing to the vendee. (*Hilmer* v. *Hills*, 138 Cal. 134, [70 Pac. 1080].) [3] There was no compliance with this part of the agreement, Rourke Company being insolvent, and Donlon was entitled to his property, as the refusal to pay terminated

the agreement.     (*Liver* v. *Mills,* 155 Cal. 459, 463, [101 Pac. 299].)

Here no question of estoppel is involved, and Rourke Company never having acquired title to the property could convey none to plaintiff.

The contention of respondent that the contract of sale was fully executed upon the arrival of the goods at Stockton, for the reason that Rourke Company elected not to exercise its right of rejection, is without merit. Payment was the principal condition upon which the title depended; and no attempt was made by Rourke Company or its vendee to comply with this provision. As owner of the property Donlon was therefore entitled to its possession.

For the reasons given the judgment and order are reversed.

Waste, P. J., and Richards, J., concurred.

A petition to have the cause heard in the supreme court, after judgment in the district court of appeal, was denied by the supreme court on June 30, 1919.

Shaw, J., Lawlor, J., Wilbur, J., and Olney, J., concurred; Melvin, J., and Lennon, J., were absent.